IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBORAH GARLAND, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 5:12-cv-509 (MTT) (CHW) |
| : | |
| CAROLYN W. COLVIN, : | Social Security Appeal |
| *Acting Commissioner of Social Security*, : | |
| : | |
| Defendant. : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Deborah Garland's application for benefits. 42 U.S.C. § 405(g). For the reasons stated below, it is **RECOMMENDED** that Plaintiff's case be **REVERSED AND REMANDED** to the Commissioner for further action.

## ADMINISTRATIVE HISTORY

Plaintiff Deborah Garland, born on April 23, 1966, first applied for Title II and Title XVI benefits in May 2007. (R. 91, 739-42). She claimed to suffer from low blood pressure, restless leg syndrome, spinal headaches, heart palpitations, facet disease, spinal disk degeneration, and peripheral neuropathy in multiple sites. (R. 109). She alleged an on-set date of November 1, 2006. (R. 746). Plaintiff's claims were denied initially and on reconsideration, and a reviewing ALJ—F. Jefferson Hughes—denied her claims in July 2009. (R 746-53).

In November 2009, before her 2007 claims were resolved at the Appeals Council level, Plaintiff filed a new application for Title II and Title XVI benefits, alleging an on-set date of March 20, 2007. (R. 67). Plaintiff's new 2009 application was denied initially and on

reconsideration. (R. 129-32). Meanwhile, the Appeals Council, in December 2010, reversed and remanded Plaintiff's initial 2007 application for: (1) consideration of "anemia/sickle cell" evidence; (2) the procurement of "updated records and medical source statements from treating sources;" (3) further evaluation of Plaintiff's mental impairments; (4) further consideration of Plaintiff's "maximum residual functional capacity," as supported by "appropriate rationale with specific references to evidence;" (5) a reassessment, if necessary, of Plaintiff's ability to work; and (6) the procurement, if warranted, of supplemental evidence from a vocational expert. (R. 755-57). Furthermore, because Plaintiff's 2007 and 2009 applications were "duplicate," the Appeal Council ordered the ALJ, on remand, to "associate the claim files and issue a new decision on the associated claims." (R. 757).

On remand in May 2011, the reviewing ALJ—now L.J. Rodriguez—noted that Plaintiff's associated case contained two records with identical exhibit labels for different evidence, which the ALJ would "probably have to consolidate." (R. 84-91). Plaintiff, though, contends that the ALJ did not consolidate the records (Doc. 13, p. 16), but that he nevertheless issued an unfavorable decision in May 2011. (R. 67-76). In that decision, the ALJ found that "based on [Plaintiff's] application for a period of disability and disability insurance benefits filed [in November 2009]" (i.e. the Title II portion of Plaintiff's 2009 application), Plaintiff "had not been under a disability [since] March 20, 2007." (R. 76). The ALJ did not discuss Plaintiff's 2007 Title II claim or either of Plaintiff's Title XVI claims (Doc. 13, p. 1-2), and the "List of Exhibits" for the May 2011 decision indicates that the ALJ failed to consider a substantial portion of the medical evidence of record. (R. 79-81).

In August 2011, ALJ Rodriguez, realizing his error, issued a new unfavorable decision. (R. 46-57). The ALJ "administratively dismiss[ed]" Plaintiff's Title II claims for "lack of

jurisdiction."[1] (R. 46). The ALJ also (1) acknowledged that he "failed to address" Plaintiff's Title XVI claims; (2) asserted continuing jurisdiction over those claims; and (3) determined that Plaintiff had not been under a disability since June 14, 2007, the date Plaintiff's application was filed. (R. 46-47). The "List of Exhibits" for the August 2011 decision, while technically incomplete,[2] shows that the ALJ had before him most of the relevant medical evidence. (R. 61-63). The August opinion itself, however, is largely a verbatim copy of the May 2011 opinion and does not readily suggest that ALJ Rodriguez considered much of the evidence omitted from the May 2011 "List of Exhibits."

Plaintiff appealed both of ALJ Rodriguez's unfavorable 2011 decisions to the Appeals Council, which, in a single, sparsely-worded "Notice of Appeals Council Action" ("notice"), denied Plaintiff's request for review in September 2012. (R. 27-29). Jeffrey P. Kirkwood, an Administrative Appeals Judge and the signatory of Plaintiff's 2012 notice, stated that while he "recognize[d] [Plainitiff's] contentions regarding the exhibit list for the Title II decision," he found that "the entire record was ultimately considered in the Title XVI decision, resulting in the same findings." (R. 28). Therefore, according to Judge Kirkwood, there was no basis to alter either of ALJ Rodriguez's decisions. (*Id.*).

---

[1] The ALJ's opinion reads: "the Administrative Law Judge does not have jurisdiction as to [Plaintiff's Title II claims] because the Appeals Council is currently reviewing the aforementioned Title II claims secondary to the undersigned Administrative Law Judge decision dated May 5, 2011." (R. 46).

[2] The administrative transcripts are hardly as "disorganized" and "discordant" as Plaintiff contends. The February 25, 2013 transcript (R. 311-738) contains 18 medical exhibits labeled "1F" to "18F". (Doc. 9-1). The May 2, 2013 transcript includes nearly 200 pages of additional medical evidence (R. 932-1113), as well as over 400 pages of repetitious medical evidence (R. 1114-1522) which, although unlabeled, largely tracks the order of the February 25, 2013 transcript. (Doc. 12-1). Not included in the May 2 transcript, which appears to reflect the evidence before ALJ Rodriguez at the time of his August 2011 decision, is exhibit "7F" of the February 25 transcript, consisting of "Office Treatment Records, dated 08/13/2008 to 10/01/2009, from GRADY MEMORIAL HOSPITAL."

**STANDARD OF REVIEW**

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including

determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must

determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## ANALYSIS

Plaintiff states two claims for relief. First, Plaintiff argues that ALJ Rodriguez improperly discounted the medical opinion of Dr. Isaac Sved, one of Plaintiff's treating physicians. (Doc. 13, pp. 9-15). Second, Plaintiff argues that the disorganized administrative record makes meaningful judicial review unlikely. (Doc. 13, pp. 16-19).

Plaintiff's second claim is persuasive. The record indicates that ALJ Rodriguez failed to consider a substantial portion of relevant medical evidence. Because the courts are tasked with conducting a "limited and meaningful" review of the whole record, and because such a review is not possible where an ALJ fails to consider, much less evaluate, a substantial portion of medical evidence, Plaintiff's case must be remanded to the Commissioner for further action. *Ryan v. Heckler*, 762 F.2d 939, 941-42 (11th Cir. 1985). On remand, the Commissioner should (1) consider all of the relevant medical evidence; (2) evaluate all of the probative medical evidence on the record, explaining "with sufficient clarity the legal rules being applied and the weight accorded," (*Id.*); and (3) re-evaluate Dr. Sved's medical opinion in light of all the objective medical evidence.

### THE ALJS' FINDINGS

Plaintiff's administrative record contains three unfavorable ALJ decisions from two ALJs. ALJ F. Jefferson Hughes delivered an opinion in July 2009 (R. 746-757), and ALJ L.J. Rodriguez delivered two opinions, one in May 2011 (R. 67-76), and one in August 2011 (R. 46-57). The following is a composite summary of both ALJs' findings, with relevant differences noted.

Following the five-step sequential evaluation procedure,[3] the reviewing ALJs both issued unfavorable decisions denying Plaintiff social security benefits. At <u>step one</u>, ALJ Hughes found that Plaintiff had not engaged in substantial gainful activity since November 1, 2006, the on-set date alleged in Plaintiff's 2007 application. (R. 748). ALJ Rodriguez found, in May 2011, that Plaintiff had not engaged in substantial gainful activity since March 20, 2007, the on-set date Plaintiff alleged in her 2009 application. (R. 69). In his August 2011 decision, however, ALJ Rodriguez found that Plaintiff had not engaged in substantial gainful activity since June 14, 2007, Plaintiff's "application date." (R. 48).

At <u>step two</u>, ALJ Hughes found that Plaintiff had the following severe impairments: "occasional arrhythmia, mild degenerative disc disease in lumbar and cervical spine, peripheral neuropathy, headaches, and restless leg syndrome." (R. 748). ALJ Rodriguez's findings differ slightly from ALJ Hughes' findings, but there is no material difference between ALJ Rodriguez's May and August findings, which stated that Plaintiff suffered from the following severe impairments: "arrhythmia; degenerative disc disease of the lumbar and cervical spine; peripheral neuropathy; hypertension [with] headaches; restless leg syndrome; chronic pain syndrome; sickle cell anemia; [and] vitamin B12 deficiency." (R. 48-49, 69).

At <u>step three</u>, both ALJs found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 50, 71, 750). Therefore, both ALJs assessed Plaintiff's Residual Functional Capacity ("RFC"), and found that Plaintiff could perform:

> <u>ALJ Hughes</u>: "light work . . . with the additional restrictions that the claimant not squat; not climb scaffolding, ladders, ropes or stairs; reach overhead only occasionally; not kneel; not crawl; and crouch and stoop only occasionally." (R. 750).

---

[3] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

<u>ALJ Rodriguez</u>: "light work . . . except that [Plaintiff can] only occasionally climb ramps and stairs but [can] never climb ladders, ropes or scaffolds; [can] occasionally balance, stoop, kneel, crouch and crawl; [can] occasionally push/pull and use foot controls; [can] occasionally reach overhead; is able to understand, remember and carry out very short simple instructions; is able to maintain attention and concentration for two hour blocks of time; is able to complete the workday and workweek without interruptions from psychologically based symptoms; is able to perform at a consistent pace without an unreasonable number and length of rest periods; is able to moderately interact with the general public; is able to accept instructions and respond appropriately to criticism from supervisors; is able to get along with co-workers without exhibiting behavioral extremes; is able to respond appropriately to changes in the work setting; and is able to set realistic goals or make plans independently of others. (R. 51; 71-72).

Based on his RFC finding, ALJ Hughes found, at <u>step four</u>, that Plaintiff was capable of performing her past relevant work as a "sewing machine operator 1." (R. 752). Accordingly, ALJ Hughes determined that Plaintiff was "not disabled." (R. 753). The Appeals Council later vacated this determination, however, because ALJ Hughes failed to admit into the record and consider several important pieces of evidence submitted after Plaintiff's hearing but before ALJ Hughes rendered a decision. (R. 755).

By contrast, ALJ Rodriguez found that Plaintiff could not perform her past relevant work, but that she could perform "other work." (R. 55, 75). Specifically, ALJ Rodriguez determined, with the aid of a Vocational Expert, that Plaintiff could work as a "Bottle Line Attendant," "Motel Cleaner," or "Mail Room Clerk." (R. 56, 76). Therefore, ALJ Rodriguez also found that Plaintiff was "not disabled."

### **FAILURE TO CONSIDER RELEVANT MEDICAL EVIDENCE**

ALJs must consider "all evidence" in a claimant's case record when making a disability determination. 20 C.F.R. §§ 404.1520(a)(3); 416.920(a)(3).[4] In Plaintiff's case, the record suggests that ALJ Rodriguez did not consider all of the medical evidence in the record when

---

[4] *See also Bonillo v. Secretary, U.S. Dept of Homeland Security*, 497 Fed. App'x. 913, 916 (11th Cir. 2012) ("It is 'an elemental principal of administrative law that agencies are bound to follow their own regulations.'") (citing *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004)).

making his May 2011 disability determination. The "List of Exhibits" submitted with ALJ Rodriguez's May 2011 opinion, which contains only 18 medical exhibits labeled "1F" through "18F" (R. 79-81), appears to reflect the administrative transcript dated February 25, 2013[5] (Doc. 9) (R. 1-751). Not included in this transcript are nearly 200 pages of additional medical evidence contained in the administrative transcript dated May 2, 2013[6] (Doc. 12) (R. 932-1113), and labeled exhibits "1F" through "11F" in the "List of Exhibits" for the August 2011 opinion. (R. 61-63). This "additional medical evidence" included:

- Treatment records from the Medical Center of Central Georgia, including records from Dr. Joe Sam Robinson Jr., a treating physician (R. 933-45);
- Treatment records from Dr. Terri Wilson, a treating physician (R. 946-51; 1039-45);
- Treatment records from Upson Regional Medical Center, including records from Dr. Jonathan Busbee, a treating physician (R. 952-88; 989-1012; 1014-37);
- Treatment records from Dr. Kim Willard, a treating physician (R. 1047-57); and
- Treatment records from Dr. Brian Remington, a treating physician (R. 1066-68).

Moreover, at no point in his May 2011 opinion did ALJ Rodriguez reference or attempt to cite any of the "additional medical evidence." (R. 67-76). In other words, neither the exhibit list nor the text of the May 2011 opinion indicates that ALJ Rodriguez considered all of the relevant medical evidence.

On review, the Appeals Council acknowledged ALJ Rodriguez's error, but concluded that there was no basis for "changing" the May 2011 decision because "the entire record was ultimately considered in [ALJ Rodriguez's August 2011] decision." (R. 4). Excluding a new introductory section, though, which does not discuss the "additional medical evidence," ALJ Rodriguez's August 2011 opinion is largely a verbatim copy of his May 2011 opinion with only

---

[5] The February 2013 transcript was filed on 3/29/2013, and it appears to contain the evidence considered by ALJ Rodriguez when making his May 2011 disability determination. (Doc. 9).

[6] The May 2013 transcript was filed on 5/08/2013, and it appears to contain the evidence considered by ALJ Rodriguez when making his August 2011 disability determination. (Doc. 13).

slight additions and alterations. The few substantive changes apparent in the August 2011 "Findings of Fact and Conclusions of Law" section cite exclusively unfavorable evidence, and rely predominantly on the findings of only one source: Dr. Terri Wilson. [7] These changes do not satisfactorily indicate that ALJ Rodriguez considered all of Plaintiff's evidence as required by law. *See, e.g.*, *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight . . . given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as whole to determine whether the conclusions reached are rational") (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)). Nor does the Appeals Council's 2012 "notice" indicate that Plaintiff received a "full and fair" evaluation of her claims on review. (R. 3-5).

There is, of course, no rigid requirement that ALJs refer to every piece of evidence in their decisions. *Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). However, an ALJ's opinion must enable reviewing courts to "conclude that the ALJ considered [a claimant's] medical condition as a whole." *Id.* Because courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]," and because ALJ

---

[7] ALJ Rodriguez added the following sentences to his August 2011 opinion:

"Records from Dr. Terri Wilson in November 2006 reveal that the claimant injured her back in October 2006 in a work accident but that she was continuing to work (Exhibit 6F). Dr. Wilson noted that the claimant was very tender to palpitation in her lumbar region, which seemed to be worse on the left, and diagnosed lumbar strain. Dr. Wilson recommended that the claimant remain out of work until January 2, 2007." (R. 52, ¶ 3).

"A note from Dr. Wilson in November 2007 indicates that when he last evaluated the claimant on May 2, 2007, the claimant stated that her back had improved and that she was working (Exhibit 6F, p.2)." (R. 52, ¶3).

"As for the opinion evidence, the undersigned notes that Dr. Terry Banks, State agency consultant, opined that, based on his review of the medical evidence of record, the claimant could perform medium work with no postural limitations (Exhibit 10F)." (R. 54, ¶ 1).

The claimant's treating physician released her to full work duty in 22007 (Exhibits 6F, 15F)." (R. 54, ¶ 3).

Rodriguez evidently failed to consider, much less evaluate, a substantial portion of Plaintiff's medical evidence, the Commissioner's decision must be reversed and remanded for further action. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). On remand, the Commissioner should "state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Ryan v. Heckler*, 762 F.2d 939, 941-42 (11th Cir. 2985). The Commissioner should also re-evaluate the opinion of Dr. Sved, which ALJ Rodriguez discounted as being "inconsistent with the objective evidence of record." (R. 54, 74).

## CONCLUSION

After careful consideration of the record, **IT IS RECOMMENDED** that Plaintiff's case be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative action. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case was assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO ORDERED**, this 13th day of November, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge